**Sherri FINLEY, Appellee,**

v.

**EMPIREGAS, INC. OF POTOSI, a Delaware Corp., and Empire Gas Corporation, a Missouri Corporation, Appellants.**

**No. 91–3099.**

United States Court of Appeals, Eighth Circuit.

Submitted April 13, 1992.

Decided Sept. 11, 1992.

Steven G. Emerson, Kansas City, Mo., argued (Thomas H. Davis, on the brief), for appellants.

George Owens Suggs, St. Louis, Mo., argued, for appellee.

Before McMILLIAN and BOWMAN, Circuit Judges, and EISELE,[*] Senior District Judge.

McMILLIAN, Circuit Judge.

Empiregas, Inc. of Potosi (EIP) and Empire Gas Corp. (EGC) (together "defendants") appeal from a final order entered in the United States District Court[1] for the Eastern District of Missouri, in favor of Sherri L. Finley, upon a jury verdict, finding that defendants violated the Missouri Human Rights Act, Mo.Rev.Stat. § 213.010 et seq. (1986), and, upon a bench trial, finding that defendants violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. Finley v. Empiregas, Inc., No. 90–1022–C–5 (E.D.Mo. July 25, 1991). Finley was awarded $4,250.00 in actual damages and $125,000.00 in punitive damages. The jury and the district court found in favor of defendants on their counterclaims for fraud in connection with Finley's purchase of propane at a discounted employee price, for conversion of an Atlanta heater, and for conversion of a company Operations and Policy Manual and awarded defendants $401.00 in actual damages and $20,000.00 in punitive damages. Id. For reversal, defendants argue that (1) there was no evidence to support the jury's punitive damages award and that the award was excessive and (2) there was insufficient evidence to support the finding of liability for failure to promote. Finley did not appeal. Following the briefing in this appeal, defendants filed a motion to strike the jury award for lack of subject matter jurisdiction. For the reasons discussed below, we deny defendants' motion and affirm the judgment of the district court.

BACKGROUND

EIP, a retail distributor of propane gas and related products and services, is one of over 300 wholly-owned subsidiaries of EGC. Finley was employed as Office Manager at EIP from March 1984 to January 1990.

When Finley first began working at EIP, the Retail Manager at that location was Jack Brewer, and there were two drivers. By November 1988, there were three drivers. The drivers' duties included delivering gas, gas tanks and appliances, installations and service. As Officer Manager, Finley's duties included bookkeeping, managing credit accounts, scheduling the driver routes and deliveries, and clerical duties.

The Retail Manager, Jack Brewer, developed health problems and, by the late fall of 1988, was physically unable to come to work. For the last two years of Brewer's employment as Retail Manager, Brewer never performed any service work or physical labor. By the spring of 1989, EGC had begun looking for a new Retail Manager for the Potosi store. During this time, Finley expressed her interest in the Retail

---

[*] The Honorable G. Thomas Eisele, Senior United States District Judge for the Eastern District of Arkansas, sitting by designation.

1. The Honorable Stephen N. Limbaugh, United States District Judge for the Eastern District of Missouri.

Manager position at EIP on several occasions. The EGC Regional Manager who had authority over EIP was Paul Stahlman. Finley testified that Stahlman wanted her to look for Brewer's replacement and also told her that she could not have the job because she was a woman. Finley also testified that she then spoke to Stahlman's supervisor, Robert Wooldridge, a Vice–President of EGC, who said that EGC was phasing out women managers. Keith Poole was eventually hired as Retail Manager in May 1989. Finley trained Poole for the position.

In July 1989, Jay Ridgeway replaced Stahlman as the Regional Manager overseeing EIP. The following month, August 1989, Poole was terminated as EIP Retail Manager. When Ridgeway told Finley that Poole was going to be fired, Finley again requested the position of Retail Manager. According to Finley, she was again told by Ridgeway that she could not have the job because she was a woman. Ridgeway interviewed three men for the position. Finley was not interviewed. Ridgeway hired Ken Harris. Finley trained Harris for the job.

On October 25, 1989, Finley tape-recorded a conversation she had with Ridgeway at the Potosi store in which they discussed the fact that she was not considered for the position of Retail Manager. A portion of the tape was played for the jury, and Ridgeway stated, among other things:

> You have the ability, you have the initiative and the drive.
>
> . . . .
>
> And the energy. You have all that. You really do. But you have the disadvantage, too, of being a woman.
>
> . . . .
>
> ... The first thing that would have happened to me if I'd have went to Paul [Lindsey] and Bob [Wooldridge] and said, "I'm going to make Sherri [Finley] manager," I'd have gotten the damndest ass-eating you ever had in your life. "Now you know God-damn good and well we can't do that, Jay.... You've been around long enough and you're smart enough to know that, that you can't do

that. Now you know you can't. And how many times have we told you we're trying to phase out women managers?"

In the same conversation, Finley also asked Ridgeway whether he thought she or Ken Harris was better qualified for the Retail Manager position. He said, "You probably would have been better in the management end of it than Kenny is."

Finley also introduced into evidence at trial defendants' Operational Policy Manual which refers to Retail Managers with the exclusive use of male pronouns, but refers to Office Managers almost exclusively with the use of female pronouns.

Finley was not experienced with installing, servicing, or repairing propane gas systems and had no mechanical or technical training in propane gas systems and operations. She also admitted that she was unfamiliar with certain safety manuals, Pamphlet 54 and Pamphlet 58, both of which are mentioned in EGC's job description for Retail Manager, as set forth in the Operational Policy Manual. Poole and Harris were relatively better trained and more knowledgeable in the technical aspects of the work than Finley. At trial, defendants claimed that Finley's lack of technical training and knowledge was the reason she was not considered for the Retail Manager position each time and that she was told it was because she was a woman to avoid pointing out her lack of qualifications. As to the various other conversations in which Finley claims she was told that she could not be Retail Manager because she was a woman, defendants' former and current employees denied having such conversations with Finley.

Both sides note that only thirteen of the over 300 EGC retail stores have female Retail Managers. It is unclear from the facts, however, whether any of those thirteen women were hired during or since the time period that Finley was pursuing the Retail Manager position at EIP.

Finley filed charges of gender discrimination against defendants with the EEOC and the Missouri Commission on Human Rights. She was subsequently fired in January 1990. After obtaining a Notice of

Right to Sue from both agencies, she filed this action in federal district court alleging: (1) violations of Title VII, including employment discrimination, retaliatory discharge, and sexual harassment creating a hostile work environment[2] and (2) violations of the Missouri Human Rights Act, including employment discrimination, retaliatory discharge, and willful discrimination entitling her to punitive damages.

Defendants counterclaimed against Finley alleging that she fraudulently obtained unearned commissions, abused their employee discount rates, and converted company property, including a heater and an Operational Policy Manual.

The district court tried the state law claims to a jury and took the Title VII claims under advisement pending the outcome of the jury trial. The jury found that defendants had discriminated against Finley on the basis of gender in their failure to twice promote her to the Retail Manager position and awarded her $4,250.00 in compensatory damages and $125,000.00 in punitive damages. The jury found no retaliatory discharge, thus resolving that claim in defendants' favor. The jury also found that Finley was liable to defendants for fraud and conversion, in the amount of $401.00 in compensatory damages and $20,-000.00 in punitive damages. Defendants unsuccessfully brought a motion for JNOV. The district court then conformed its findings on the Title VII claims to match the jury's findings under the state law claims; thus, the award of damages remained the same. Defendants appealed.

After the briefing in this appeal was completed, on March 12, 1992, defendants filed a motion to strike the jury award for lack of subject matter jurisdiction claiming that the state law claims should not have been tried to a jury. On the same day, we ordered that this motion would be considered with the underlying direct appeal. *Finley v. Empiregas, Inc.*, No. 91–3099 (8th Cir. Mar. 12, 1992) (order).

**DISCUSSION**

*Motion to Strike Jury Award*

■ Defendants argue that the jury award on Count II under the Missouri Human Rights Act should be vacated because the district court improperly tried the state claims to a jury. This is the first time defendants have made this argument and no such argument was made before the district court. Defendants argue that because the state claims should not have been tried to a jury, the district court had no subject matter jurisdiction, thereby giving this court the authority to strike the jury award.

On February 28, 1992, the Missouri Court of Appeals in *State ex rel. Tolbert v. Sweeney*, 828 S.W.2d 929, 930–32 (Mo.Ct. App.1992) (*Tolbert*), ruled that § 213.111 of the Missouri Human Rights Act does not provide for a trial by jury. *See also Pickett v. Emerson Elec. Co.*, 830 S.W.2d 459 (Mo.Ct.App.1992). *But see Stewart v. Yellow Freight Sys., Inc.*, 702 F.Supp. 230 (E.D.Mo.1988). Even if this court were to hold *Tolbert* dispositive of how the Missouri Supreme Court would rule should it face the issue, it does not affect the district court's subject matter jurisdiction. Even if state claims should have been tried by the court and not a jury as a matter of state law, the district court still had subject matter jurisdiction over the dispute. Therefore, we deny defendants' motion to strike the jury award on Count II.

*Punitive Damages Award*

Defendants argue that there was no evidence of outrageous conduct to support a punitive damages award. Defendants argue that the most that can be drawn from the evidence is that they had an old-fashioned and benignly paternalistic attitude toward women, that EGC and EIP were concerned about women's physical ability to perform the job of Retail Manager, and that Ridgeway was also concerned about the possibility that Finley might get hurt. Defendants also argue that because they prevailed on the retaliatory discharge claim, the evidence must have been insuffi-

---

**2.** This charge was voluntarily dismissed by Finley prior to trial.

cient as a matter of law to find "outrageous conduct."

Finley argues that the evidence supports the jury's award of punitive damages. Finley argues that she testified to six different occasions when persons in supervisory positions told her that EGC was no longer hiring and was phasing out women Retail Managers. Finley also testified that Ridgeway told her he knew this policy was unlawful and unfair. Ridgeway admitted at trial that the taped conversation occurred, but claimed that his statements that they were phasing out women Retail Managers and that he would get himself in trouble if he promoted her, were lies to protect Finley's feelings. Finley argues that the evidence of her supervisors' statements is by itself sufficient, but also argues that the sexist wording in the Operational Policy Manual and the low percentage of women retail managers support her claim.

*Burnett v. Griffith*, 769 S.W.2d 780, 789 (Mo.1989) (en banc) (*Burnett*), sets out the standard for awarding punitive damages under Missouri law: defendants' conduct must have been "outrageous because of defendant[s'] evil motive or reckless indifference to the rights of others." The district court gave the jury the proper *Burnett* instruction and we hold that there was sufficient evidence for the jury to find outrageous conduct.

■ On review, we construe the evidence in the light most favorable to the prevailing party, Finley. *See, e.g., Craft v. Metromedia, Inc.*, 766 F.2d 1205, 1212 (8th Cir. 1985), *cert. denied*, 475 U.S. 1058, 106 S.Ct. 1285, 89 L.Ed.2d 592 (1986); *Crues v. KFC Corp.*, 729 F.2d 1145, 1148 (8th Cir.1984). The jury, based upon Finley's testimony of her conversations with several supervisors and the taped conversation with Ridgeway, could have found that defendants had a firmly established policy and practice of discriminating against women despite their admitted knowledge that the policy was unlawful and that this was an evil motive or reckless indifference to the rights of others sufficient to satisfy *Burnett*. This, in combination with the sexist wording of the Operational Policy Manual and the low percentage of women in Retail Management positions, was sufficient evidence for a reasonable jury to find outrageous conduct.

Second, defendants argue that the punitive damages are excessive under the Missouri standard that there must be a reasonable relationship between the amount of actual and punitive damages, taking into consideration the respective levels of intent and malice required. Defendants argue that $125,000.00 in punitive damages are excessive when compared to only $4,250.00 in actual damages.

Finley argues that defendants have not cited any cases or offered any substantive argument in support of their claim that the punitive damages were excessive, nor have defendants pointed to anything in the record which shows that the jury abused its discretion in awarding punitive damages.

■ Determining the amount of punitive damages is left to the discretion of the jury. *Wisner v. S.S. Kresge Co.*, 465 S.W.2d 666, 670 (Mo.Ct.App.1971) (*Wisner*); *see, e.g., Hughes v. Box*, 814 F.2d 498, 503–04 (8th Cir.1987) (applying Missouri law). This court will only disturb the jury's verdict when "it plainly appears that the jury has abused its discretion" and "the amount of punitive damages bears no reasonable relationship to the injury inflicted." *Wisner*, 465 S.W.2d at 670; *see also Rotert v. Peabody Coal Co.*, 513 S.W.2d 667, 679 (Mo.Ct.App.1974) (*Rotert*). While the ratio of actual damages to punitive damages can be used to demonstrate the excessiveness of punitive damages, *see Ogilvie v. Fotomat Corp.*, 641 F.2d 581, 586–87 (8th Cir. 1981) (applying Missouri law), there is no mathematical formula applied to determine punitive damages and they need not bear any specific relationship to the actual damages received. *Rotert*, 513 S.W.2d at 679. We hold that the district court did not err in refusing to overturn the jury's punitive damages award as the award bears a reasonable relationship to Finley's injury.

*Sufficiency of Evidence on Liability*

Defendants argue that there was insufficient evidence to support the jury's finding of liability because Finley was not qualified for the Retail Manager position. Therefore, defendants argue, the verdict should be reversed either (1) because Finley failed to establish her prima facie case under *McDonnell Douglas* [3] *–Burdine*, [4] or (2) because defendants proved that regardless of their discrimination, Finley would not have been promoted under the *Price Waterhouse* [5] standard. Defendants rely on Finley's lack of technical and safety skills and her lack of knowledge about propane gas and related products. Defendants argue that no reasonable jury could have found her qualified for the job because such skills and knowledge are included in the job description for Retail Manager in defendants' Operational Policy Manual. Alternatively, even if they did discriminate against women, defendants argue no reasonable jury could have found that defendants would have promoted her anyway, because of her lack of qualifications.

Finley argues that whether she was qualified for the position of Retail Manager was a fact to be determined by the jury and there was ample evidence supporting the jury's finding. The jury could have found that she was qualified and that defendants' suggestion to the contrary was mere pretext for their discrimination. In support, Finley highlights, among other things: Ridgeway's admission in the taped conversation that she had the ability to perform the job of Retail Manager; testimony of other Retail Managers who stated they did not have to do heavy lifting in their jobs; evidence that Mr. Brewer did not do manual labor for the last two years of being the EIP Retail Manager; evidence that Finley and three drivers operated the EIP store for five months; evidence that Finley trained both Poole and Harris for their positions as Retail Manager; and provisions of the Operational Policy Manual which suggest that Finley really was not unqualified because of her lack of technical skills.

It is unclear if defendants are only arguing that there was insufficient evidence to support the jury verdict on the Missouri Human Rights Act claim or both the jury verdict and the district court's finding of liability under Title VII. We will assume defendants are challenging the sufficiency of the evidence on both claims. Our analysis is the same for both the state and federal claims because "[d]ecisions under the various federal employment discrimination statutes are applicable and authoritative under the [Missouri Human Rights Act] as well as federal law." *Lane v. Ground Round, Inc.*, 775 F.Supp. 1219, 1223 (E.D.Mo.1991) (citations omitted); *see also Midstate Oil Co. v. Missouri Comm'n on Human Rights*, 679 S.W.2d 842, 845–46 (Mo.1984) (en banc); *Missouri Comm'n on Human Rights v. City of Sikeston*, 769 S.W.2d 798, 800–01 (Mo.Ct.App.1989); *Valle Ambulance District v. Missouri Comm'n on Human Rights*, 748 S.W.2d 710, 711 (Mo.Ct.App.1988).

The issue on appeal is whether the record contains sufficient evidence for a rational factfinder to conclude that, absent her gender, Finley would have been promoted. In answering this question, this court will not assess the adequacy of a party's showing at any particular stage of the *McDonnell Douglas–Burdine* or *Price Waterhouse* analyses, "[r]ather, we are directed to focus our attention upon the ultimate factual issue of whether the employer intentionally discriminated against the employee." *Morgan v. Arkansas Gazette*, 897 F.2d 945, 948 (8th Cir.1990) (*Morgan*); *see also United States Postal Serv. Bd. of Governors v. Aikens*, 460 U.S. 711, 714–15, 103 S.Ct. 1478, 1481–82, 75 L.Ed.2d 403 (1983); *Williams v. Valentec Kisco, Inc.*, 964 F.2d 723, 726–27 (8th Cir.1992); *Barber*

---

**3.** *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

**4.** *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981).

**5.** *Price Waterhouse v. Hopkins*, 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989).

*v. American Airlines, Inc.*, 791 F.2d 658, 659–60 (8th Cir.), *cert. denied*, 479 U.S. 885, 107 S.Ct. 278, 93 L.Ed.2d 254 (1986). In doing so, we consider the evidence in the light most favorable to Finley, as the prevailing party, assume that all conflicts of evidence were resolved in favor of Finley, assume as proved all facts which Finely's evidence tends to prove, and give Finley all favorable inferences which may be reasonably drawn from the evidence. *Morgan*, 897 F.2d at 948 (citation omitted).

In applying this standard of review, we hold that there was sufficient evidence to support both the verdict and the finding of liability in favor of Finley. Defendants presented evidence at trial that Finley was not knowledgeable about proper propane gas safety procedures, installations and repair. By contrast, both Poole and Harris had experience and training in propane gas operations. Finley presented evidence from which a rational factfinder could reasonably believe that her alleged lack of knowledge concerning propane gas was a mere pretext for defendants' gender discrimination. Finley testified that she was told on six occasions that she was not promoted because she was a woman, not because she was unqualified for the position of Retail Manager. In the taped conversation, Ridgeway admitted that Finley would have been better in the "management end" than Harris. Additionally, Finley presented evidence that performing propane gas installation and service work was not necessary to be Retail Manager. Brewer did not do that type of work for the last two years that he was EIP Retail Manager.

Accordingly, we affirm the judgment of the district court.