# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 03-1398
_____

Sandra J. Erenberg,                 *
                                         *

        Plaintiff - Appellant,    *
                                           * Appeal from the United States
      v.                             * District Court for the District
                                           * of Minnesota.
Methodist Hospital,           *
                                         *

        Defendant - Appellee.    *
                                           *

_____

Submitted: October 24, 2003
Filed: February 4, 2004

_____

Before BYE, HANSEN and MELLOY, Circuit Judges.

_____

MELLOY, Circuit Judge.

Sandra J. Erenberg appeals the district court's[1] adverse grant of summary judgment in a case against her former employer, Methodist Hospital, claiming sexual harassment, age discrimination, and retaliatory discharge. We affirm.

---

[1]The Honorable Michael J. Davis, United States District Court Judge for the District of Minnesota.

I.

Viewed in the light most favorable to the Plaintiff, the facts are as follows. On August 10, 1998, Methodist Hospital ("Methodist") hired Sandra Erenberg to work as a health unit coordinator in the Emergency Room. Erenberg was hired to work forty-eight hours per pay period. Health unit coordinators at Methodist are hired for a particular shift and number of hours per pay period, not for specific days of the week, and hospital policies allow Methodist to change the work schedules of its employees as needed to handle the work flow. Methodist's attendance policy is a no-fault policy that expects employees to work at least 97% of their scheduled shifts. The policy does not distinguish between legitimate or illegitimate absences. Instead, all absences are counted against the employee unless they result from an approved leave of absence such as FMLA or jury duty.

Methodist stationed its health unit coordinators either at the control desk or in triage. Health unit coordinators at the control desk were required to take verbal orders from three physicians, communicate with the lab, and request x-rays. Those health unit coordinators at the triage desk would greet patients and record routine information. Erenberg began her employment working at the control desk.

Performance issues arose early in Erenberg's employment. Her supervisor, Joann Brand, observed that she was having trouble with speed and accuracy at the control desk. Brand responded by moving Erenberg to triage, which Brand perceived to be less stressful. Brand then received complaints that Erenberg was eating at the triage desk and being rude to patients. Erenberg admits to eating at her desk, but denies being rude to patients. Brand spoke to Erenberg at least twice in an attempt to correct the behavior.

Beginning in October 1998, Erenberg was absent from work a number of times due to illness. On one occasion, she was two hours late for work because her car broke down. These absences were counted against her, according to Methodist's attendance policy.

On March 29, 1999, Erenberg received her first written warning, for excessive absenteeism. On June 2, 1999, Erenberg received a second written warning for additional absences and alleged job performance deficiencies. The warning stated that:

> Physician's . . . orders have been entered incorrectly relating to Lab and X-rays and established procedures have not been followed, resulting in patient delays for physicians providing a diagnosis.

> Other areas of concern have been the use of the telephone for personal reasons, especially when patients present themselves at triage. At times you have been rude to patients when approached. Frequently, you are consuming food at the triage desk, which is unacceptable.

> In addition, proper procedure has not been followed when a patient presents themself at triage and you have directed them to the waiting area without first informing the triage nurse of the presenting complaint. At times, you have not followed direction given by the triage nurse.

> In regards to attendance, you have been absent one time since given a written warning on March 26, 1999.

> Improvement in job performance and attendance requires immediate improvement, otherwise further disciplinary action, including termination may occur. . . .

Erenberg disagreed with the fairness of the reprimand, but did not believe that it was issued in a discriminatory manner.

During September 1999, Methodist received approximately fourteen complaints from within the department and three from outside the department regarding Erenberg's job performance. A number of complaints stated that Erenberg entered physician orders incorrectly and that Erenberg did not follow proper procedures when patients approached the triage desk. The complaints also stated that Erenberg continued to be rude and inattentive to patients, and that she made personal phone calls from the triage desk. The complaints also regarded Erenberg's attendance, including tardiness, leaving work early without finishing her tasks, and taking extended breaks. Erenberg denied that she was rude to patients. She claimed that she had permission for her extended breaks, and that other employees engaged in many of the same behaviors as she did, such as leaving work early.

Erenberg states that on the weekend of October 7-8, 1999, she was verbally attacked by another health unit coordinator, Tracy Archer. Erenberg complained to Brand and the charge nurse about the incident. Erenberg met with Brand and Sher Stiles, a charge nurse, to further discuss the encounter. Brand and Stiles indicated they would speak with Archer and follow-up with Erenberg. Stiles spoke with Archer, but failed to follow-up with Erenberg.

On October 18, 1999, Erenberg was given a third written warning and a three-day suspension for the complaints made against her in the previous month. She was required to draft a letter expressing her continued desire to work at Methodist and her plans for improvement. Erenberg filed an internal grievance on October 25, 1999.[2]

_____

[2]A typographical error in the district court's opinion incorrectly shows this grievance was filed on October 28, 1999. The Plaintiff also refers to this

In the grievance, Erenberg stated that one health unit coordinator, whom she later identified as Archer, engaged in flirtatious sexual behavior with males at the workplace, and that excessive sexual conversations took place in the workplace.[3]

Erenberg also complained about a change in her work schedule which she found discriminatory. Erenberg reported that early that fall, two younger health unit coordinators were hired, and her schedule, as well as the schedule of 54-year-old Linda Ward, were changed to accommodate the new hires.

On October 28, 1999, Human Resources Director Mark Nordby met with Erenberg to address her concerns. In that meeting, Erenberg provided only Archer's name with regard to her complaints, and Nordby informed her he would be unable to investigate behavior by others without her identifying them. Erenberg reported that Archer flirted with male technicians and doctors, and that Archer occasionally touched males employees on the shoulder, arm, or back. Erenberg also stated that she was offended by sexual jokes in the workplace. In response, Nordby spoke to Archer, wrote a memorandum about the confrontation and added it to Archer's file, and provided Archer with a copy of Methodist's policy on harassment and offensive behavior. Nordby also asked Stiles to follow-up with Archer regarding her behavior. Nordby investigated the schedule change and the discipline of which Erenberg had complained, and concluded that both were in accord with Methodist's policies. Nordby followed up with Erenberg by written memorandum on December 9, 1999.

---

grievance as filed on October 28.

[3]Contrary to the Plaintiff's contention in her brief at page 11, no mention of the "Malibu Barbie" name-calling appears in this grievance.

After her discussion with Nordby, Erenberg perceived that no action had been taken, and she went to the vice-president of Human Resources, Mr. LaPointe, to complain. LaPointe told her that "if [she didn't] like it here, [she] should find another job." App. 20, 168. Erenberg then talked to David Wessner, CEO, who agreed with the findings from her supervisors and mentioned that he conducts a sexual harassment seminar annually. Neither LaPointe nor Wessner did anything further.

In December 1999, Methodist received two more written complaints from Erenberg's co-workers about her behavior. One co-worker complained that Erenberg engaged in disrespectful and bossy behavior. Another co-worker complained that Erenberg told her that she was condescending and "uppity." In addition to these complaints, Erenberg's supervisor received several other complaints about Erenberg's behavior on the evening of December 18, 1999. During this time, Erenberg continued to have an absenteeism rate above 3%. Erenberg was terminated on December 29, 1999, at age 50.

## II.

We review the District Court's grant of summary judgment de novo. Jackson v. Ark. Dep't of Educ., Vocational and Technical Educ. Div., 272 F.3d 1020, 1025 (8th Cir. 2001). Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admission on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "The nonmoving party is entitled to benefit of all reasonable inferences to be drawn from the underlying facts in the record." Widoe v. Dist. # 111 Otoe County Sch., 147 F.3d 726, 728 (8th Cir. 1998). However, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986). Rule 56(c) "mandates the entry of

summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

III.

Erenberg's hostile work environment claims are evaluated under the burden shifting analysis of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).[4] Breeding v. Arthur J. Gallagher and Co., 164 F.3d 1151, 1156 (8th Cir. 1999); Hoover v. Norwest Private Banking, 632 N.W.2d 534, 542 (Minn. 2001) (applying the McDonnell Douglas analysis to civil rights claims under the Minnesota Human Rights Act). Under this framework, the plaintiff first must demonstrate a prima facie case of discrimination. Breeding, 164 F.3d at 1156. If, and only if, the Plaintiff makes a prima facie case, the burden shifts to the employer to articulate some legitimate, nondiscrimatory reason for its employment decision. Id. at 1157. If the employer successfully demonstrates a non-discriminatory reason, then the burden shifts back the plaintiff to show the employer's stated reason was a mere pretext for discrimination. Id. at 1158.

To establish a prima facie case on a hostile work environment sexual harassment claim, the Plaintiff must prove: (1) that she was a member of a protected group, (2) the occurrence of unwelcome harassment, (3) a causal nexus between the harassment and her membership in the protected group, (4) that the harassment affected a term, condition, or privilege of employment, and (5) that the employer knew or should have known of the harassment and failed to take prompt and effective remedial action. Carter v. Chrysler Corp., 173 F.3d 693, 700 (8th Cir. 1999).

---

[4]Erenberg's federal and state claims will be analyzed together. See Wilking v. County of Ramsey, 153 F.3d 869, 872 (8th Cir. 1998).

-7-

"To be actionable, harassment must be both objectively and subjectively offensive, such that a reasonable person would consider it to be hostile or abusive, and courts make this determination 'by looking at all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" Breeding, 164 F.3d at 1158, quoting Faragher v. City of Boca Raton, 524 U.S. 775, 787-88. "Conduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment–an environment that a reasonable person would find hostile or abusive–is beyond Title VII's purview." Harris v. Forklift Systems, Inc., 510 U.S. 17, 21 (1993). "Simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." Breeding, 164 F.3d at 1158 (internal citations omitted).

The district court correctly found that the harassment Erenberg experienced was not sufficiently severe and pervasive to be actionable. The Plaintiff bases her sex harassment claims on the following allegations: (1) that she was called "Malibu Barbie" by her co-workers two or three times, (2) that other employees exchanged backrubs in the workplace, (3) that other employees told sexual jokes in the workplace, and (4) that Tracy Archer placed her hands on male employees' shoulders, arms, and backs. These allegations are insufficient to show sexual harassment. "Sporadic use of abusive language, gender-related jokes, and occasional teasing are the ordinary tribulations of the workplace, and as such, they do not amount to actionable harassment." Breeding, 164 F.3d at 1159 (internal quotations omitted). We find that these behaviors, in the moderate amounts that Erenberg alleges they occurred, do not show that hers was a workplace "permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." Harris, 510 U.S. at 21 (internal quotations omitted).

IV.

Erenberg claims that she suffered age discrimination when her schedule was changed and when she was terminated. Erenberg's claims of age discrimination are also analyzed under the McDonnell Douglas burden-shifting framework. See O'Connor v. Consol. Coin Caterers Corp., 517 U.S. 308, 309-10 (1996). In order to establish a prima facie case of age discrimination, the Plaintiff must show that she "(1) is a member of the protected class; (2) was qualified for the position from which [s]he was demoted or discharged; and (3) was replaced by another person." Rothmeier v. Inv. Advisers, Inc., 932 F. Supp. 1156, 1159 (D. Minn. 1996) (citing McDonnell Douglas, 411 U.S. at 802).

Erenberg did not prove a prima facie case of age discrimination, because she failed to show that she was qualified for the position from which she was discharged. It is undisputed that Methodist identified deficiencies in Erenberg's work performance, and that Methodist communicated its findings to Erenberg on a regular basis. Erenberg was aware that she was not performing her duties in a way that met Methodist's legitimate expectations. The district court properly granted summary judgment for Methodist on the claims of age discrimination.

V.

Retaliation claims are also analyzed under the three-part burden-shifting framework. To establish a prima facie case for retaliation, the Plaintiff must show that (1) she filed a charge of harassment or engaged in other protected activity; (2) her employer subsequently took an adverse employment action against her; and (3) the adverse action was causally linked to the protected activity. See Cross v. Cleaver, 142 F.3d 1059, 1071 (8th Cir. 1998).

Here, Erenberg claims there is a causal connection between her complaints and her discharge. However, the uncontested facts belie this contention. Methodist has presented evidence that Erenberg was consistently disciplined for the same performance and attendance issues throughout her employment, both before her complaint and after. Methodist's disciplinary actions were based on several complaints the hospital received regarding Erenberg's behavior, and the hospital followed its policies by first communicating with Erenberg informally, then in a series of formal reprimands. Erenberg received at least four warnings that her performance was unsatisfactory before she ever complained about the alleged hostile work environment. Erenberg has thus failed to show a causal link between her discharge and her age. Therefore, the district court properly granted summary judgment for the employer on Erenberg's claim of retaliation.

## VI.

Accordingly, the judgment of the district court is affirmed.

_____