**Kathryn G. BUNDA, Plaintiff,**

v.

**John E. POTTER, Individually and in his official position as Postmaster General; United States Postal Service, and Ray Davidson, Defendants.**

**No. C 03–3102 MWB.**

United States District Court,
N.D. Iowa,
Central Division.

May 2, 2005.

Blake Parker, Blake, Parker Law Office, Fort Dodge, IA, for Plaintiff.

Stephanie Johnson Wright, US Attorney's Office, Cedar Rapids, IA, Martha A. Fagg, US Attorney's Office, Sioux City, IA, for Defendants.

**MEMORANDUM OPINION AND ORDER REGARDING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

BENNETT, Chief Judge.

**TABLE OF CONTENTS**

*I. INTRODUCTION* ..... 1042
*A. Factual Background* ..... 1042
*1. The parties* ..... 1042

 2. *Allegations of harassment* .......... 1043
3. *Allegations of retaliation* .......... 1043
B. *Procedural Background* .......... 1044
1. *The Complaint* .......... 1045
2. *The motion for summary judgment* .......... 1045
3. *The defendants' motion to strike* .......... 1045

II. *LEGAL ANALYSIS* .......... 1046
A. *Standards For Summary Judgment* .......... 1046
B. *Proper Defendants* .......... 1047
1. *Arguments of the parties* .......... 1047
2. *Analysis* .......... 1048
C. *Punitive Damages Against A Federal Agency* .......... 1049
D. *Bunda's Hostile Environment Claim* .......... 1049
1. *Arguments of the parties* .......... 1049
2. *Analysis* .......... 1051
a. *Nature of the claim* .......... 1051
b. *Failure to exhaust administrative remedies and continuing violations* .......... 1051
i. *The exhaustion requirement* .......... 1051
ii. *Morgan, exhaustion, and continuing violations* .......... 1052
iii. *Was there a "continuing violation"?* .......... 1052
c. *The required showings on the merits* .......... 1053
i. *The prima facie case* .......... 1053
ii. *Actionable harassment* .......... 1054
d. *Adequacy of the employer's response* .......... 1056
i. *Standards for employer liability* .......... 1056
ii. *Application of the standards* .......... 1057
e. *Damages for emotional distress* .......... 1058
i. *Standards for emotional distress damages* .......... 1058
ii. *Application of the standards* .......... 1059
3. *Summary* .......... 1060
E. *Bunda's Retaliation Claim* .......... 1060
1. *Arguments of the parties* .......... 1060
2. *Analysis* .......... 1060
a. *The applicable burden-shifting analysis* .......... 1060
b. *Application of the standards* .......... 1061

III. *CONCLUSION* .......... 1062

Confusions and misdirections aside, the issue on the defendants' motion for summary judgment in this case is whether the plaintiff postal worker's claims of sexual harassment by a temporary supervisor and retaliation for complaining about sexual harassment should go to a jury. When the proper standards are applied to the claims actually at issue, the answer to that question becomes if not clear, at least discernible.

## I. INTRODUCTION

### A. Factual Background

The court will not attempt here an exhaustive dissertation of the undisputed and disputed facts in this case. Rather, the court will identify the core of undisputed facts and sufficient of the disputed facts to put in context the parties' arguments for and against summary judgment.

#### 1. The parties

Plaintiff Kathryn Bunda was and is an employee of the defendant United States Postal Service (USPS) at the Fort Dodge,

Iowa, Post Office. She was hired in 1993 and, for the majority of the time since, was employed as a mail processor or senior mail processor. She is a member of the "Clerk craft." Defendant John E. Potter is the Postmaster General of the USPS. Defendant Ray Davidson, like Bunda, is a member of the "Clerk craft" of the USPS in the Fort Dodge Post Office, but he has served as a "204B temporary supervisor" for certain periods of time.

*2. Allegations of harassment*

In late 1998, Bunda began making complaints to supervisors and managers at the Fort Dodge Post Office about harassment by Davidson. She made further complaints in early 1999, again on July 26, 1999, when Davidson was not a supervisor, and in 2000, when he was a supervisor. The harassment in late 1998 involved one incident in which Davidson purportedly grabbed Bunda's buttocks and said, "I can't resist your nice butt," to which Bunda responded by telling Davidson he should never do that to her again, and incidents, which Bunda contends were routine, in which Davidson would rub up against her with his body or pat her buttocks. In early 1999, Bunda reported to her supervisor, Bob Adams, that Davidson was sexually harassing her. Adams passed on the report to Officer In Charge (OIC) Kim Gould, who told Bunda that she would "handle it" by having Adams talk to Davidson. At an unknown date later in 1999, Bunda, accompanied by a friend, Martin Gubbels, reported to OIC Gould that Davidson was continuing to harass Bunda. On July 26, 1999, Davidson allegedly engaged Mr. Gubbels in conversation about how good Bunda might be in bed and the fantasies he had had about her, concluding the conversation by pinching Bunda's buttock in plain view of Mr. Gubbels. Bunda reported this incident, in writing, to her supervisor, June Martindale, who said she would report it to OIC Gould. Martindale allegedly told Bunda later that nothing would be done about the incident. Bunda alleges that, after July 26, 1999, Davidson continued to make lewd comments, comment on her clothes and appearance, follow her around the Post Office, and once followed her halfway home. Bunda alleges that Davidson also harassed other female employees of the Post Office. The defendants have denied these specific allegations of harassment on the ground that Bunda has not provided sufficient support for her allegations to defeat a motion for summary judgment.

Bunda contends that she has suffered anxiety and other physical and emotional problems because of the harassment. The defendants also deny these allegations on the ground that Bunda's citations to the record are insufficient.

*3. Allegations of retaliation*

In addition to harassment, Bunda alleges that Post Office managers and supervisors retaliated against her for complaining about Davidson's harassment by taking various kinds of disciplinary action against her. Bunda admits that her own behavior toward Davidson and other supervisors led to disciplinary action, but she contends that the disciplinary action was, nevertheless, taken in retaliation for her complaints about harassment.

Somewhat more specifically, Bunda admits that she was disciplined in April 2000 for an incident in which she refused to follow instructions from her supervisor, Ms. Martindale. Although Bunda admits that she raised her middle finger at Ms. Martindale, she denies the allegation that she accompanied the gesture with foul language. She also contends that other people who made similar gestures to supervisors, or even used foul language, were not disciplined. Bunda received a letter of warning for "improper conduct/failure to follow instructions." Bunda contends that

she filed a grievance about the disciplinary letter, because she contends that Martindale's instructions violated seniority rules. She asserts that she dropped the grievance when Martindale left the Post Office.

Another incident occurred on July 19, 2000, in which Bunda admits that she refused to follow Davidson's instructions to report to work at the "box section" at another USPS facility in downtown Fort Dodge. Bunda again contends that the direction from Davidson violated seniority rules, although she did eventually report to the "box section," accompanied by Mr. Gubbels. Bunda also admits that she had a confrontation with Davidson on July 20, 2000, when she refused to follow his directions for putting labels into a sorting machine in a manner that she considered unsafe. Bunda admits that she did not file a report about unsafe operation of the sorting machine until August 17, 2000. At the time of the incident, Bunda was sent home, but Bunda contends that no formal disciplinary action was taken against her for any of the incidents in July 2000 until after she filed internal complaints about harassment in August 2000. As a result of the disciplinary complaints from the incidents in July 2000, Bunda was issued a two-week suspension. The suspension was actually issued by another supervisor, Kim Eaton, rather than by Davidson, because Davidson did not have the authority as a 204B temporary supervisor to take such disciplinary action. Bunda was never required to serve the suspension, because she filed a grievance about it, and the time within which a disciplinary penalty must be served has since expired.

Bunda also claims that, on August 28, 2000, in retaliation for her complaints about harassment, Davidson attempted to assign an employee with less seniority to Bunda's "bid job" running the sorting machine, without reassigning Bunda to new duties. Bunda contends that this incident ended when the union shop steward intervened to remind Davidson that seniority was important and that employees should be allowed to do their "bid jobs." Bunda also claims that, on September 6, 2000, after she returned from vacation, Davidson again complained about the way that she had set up a sorting machine, but that another employee had actually set up the sorting machine. The parties dispute whether Davidson said he was giving Bunda a direct order to change the set up of the machine, but they agree that Bunda refused to change the set up, and instead told Davidson to have an employee with less seniority change the set up. Although the more junior employee told to do the job allegedly called Davidson a "fucking asshole," she was not disciplined the way Bunda had been for using foul language toward supervisors. Instead, Davidson sent Bunda home again and proposed another two-week suspension. The defendants contend that OIC Balik issued a grievance decision to administer a two-week suspension for the incident on September 6, 2000, but Bunda contends that the suspension was withdrawn, because Davidson eventually admitted that the incident was substantially different from the way he initially reported it to OIC Balik.

### *B. Procedural Background*

The parties agree that, on November 28, 2000, Bunda filed an Equal Employment Opportunity Complaint alleging sex discrimination by Davidson. The administrative proceedings concluded, and Bunda was issued a right-to-sue notice.[1]

1. The defendants' constant references to the findings in the administrative proceedings suggest that the defendants consider this action one for judicial review. However, it is no such thing. Although "[a] postal employee must exhaust applicable administrative remedies before commencing a Title VII action in federal court," *Patrick v. Henderson,* 255 F.3d 914, 915 (8th Cir.2001), the federal lawsuit,

*1. The Complaint*

Bunda filed her Complaint in this court on December 23, 2003, naming as defendants John E. Potter, individually and in his official capacity as Postmaster General, the USPS, and Ray Davidson. In her Complaint, Bunda alleges that "Defendant Ray Davidson created a sexually hostile environment by consistently sexually harassing the plaintiff. This sex harassment was directed at the plaintiff because she is a female." Complaint, ¶ 10; *see also id.*, ¶¶ 11–15 (also making clear that the plaintiff was alleging a sexually hostile environment harassment claim based on Davidson's conduct). She also alleged that "Fort Dodge Post Office management began to harass the plaintiff in retaliation for her asserting her rights under the Civil Rights Act," by accusing her of misconduct, taking disciplinary actions against her, and failing to follow seniority rules. *See id.* at ¶ 16. Thus, for her "First Cause Of Action," Bunda alleges "discriminatory actions" in violation of Title VII, *see id.* at ¶ 18, which her complaint makes clear took the form of sexually hostile work environment harassment. *See id.* at ¶ 17 (incorporating the allegations in previous paragraphs, which refer to "sex harassment" or a "sexually hostile environment"). For her "Second Cause Of Action," Bunda alleges "retaliatory actions." *See id.* at ¶ 20. For relief, Bunda seeks declarations that the defendants' actions violated the Civil Rights Act of 1964, as well as awards of back wages and actual compensatory damages, future wages and future compensatory damages, punitive damages, costs and attorney fees, and such other relief as is appropriate. *See id.* at "Prayer For Relief." The defendants filed an Answer April 13, 2004, denying Bunda's claims. This matter is set for jury trial beginning on June 13, 2005.

*2. The motion for summary judgment*

The defendants filed the motion for summary judgment presently before the court on March 4, 2005. The motion was filed under seal, purportedly to protect the privacy of the plaintiff. Bunda resisted the motion on March 28, 2005, and the defendants filed a reply in further support of their motion on April 1, 2005.

The defendants did not initially request oral arguments on their motion for summary judgment, but Bunda did in her resistance. Although it has been the court's strong preference over the years to grant oral arguments whenever requested, the court has not found oral arguments necessary to the resolution of the defendants' motion for summary judgment in this case. Moreover, the court's busy schedule, including post-trial motions in one federal death-penalty case and pre-trial motions and jury selection in another, has not permitted the timely scheduling of oral arguments sufficiently in advance of trial in this matter to permit timely resolution of the motion for summary judgment. Therefore, the court will resolve the defendants' motion for summary judgment on the parties' written submissions.

*3. The defendants' motion to strike*

On April 4, 2005, the defendants also moved to strike portions of Bunda's state-

once properly commenced, is not merely one for judicial review of the administrative determinations, but an action *de novo* for relief on the merits. *See Chandler v. Roudebush,* 425 U.S. 840, 96 S.Ct. 1949, 48 L.Ed.2d 416 (1976) (federal employees have the same right to trial *de novo* of Title VII claims in federal court as private-sector employees upon exhaustion of administrative remedies); *see also Johnson v. Yellow Freight Sys., Inc.,* 734 F.2d 1304, 1309–10 (8th Cir.1984) (the trial court has the discretion to exclude administrative findings with respect to discrimination claims under Title VII on the ground that the probative value of such evidence is outweighed by its potential for undue prejudice).

ment of disputed facts in support of her resistance to the defendants' motion for summary judgment. The defendants contends that Bunda's statements do not expressly admit the defendants' own statements of undisputed facts or are otherwise comply with the requirements of N.D. IA. L.R. 56.1(b)(4) to indicate portions of the record establishing the basis for a factual dispute. Bunda did not expressly respond to this motion, apparently resting on the sufficiency of the challenged responses.

## *II. LEGAL ANALYSIS*

### *A. Standards For Summary Judgment*

The parties here agree generally on the standards applicable to a motion for summary judgment. Rule 56 of the Federal Rules of Civil Procedure provides that a defending party may move, at any time, for summary judgment in that party's favor "as to all or any part" of the claims against that party. FED. R. CIV. P. 56(b). "The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). As this court has explained on a number of occasions, applying the standards of Rule 56, the judge's function at the summary judgment stage of the proceedings is not to weigh the evidence and determine the truth of the matter, but to determine whether there are genuine issues for trial. *Quick v. Donaldson Co.,* 90 F.3d 1372, 1376–77 (8th Cir.1996); *Johnson v. Enron Corp.,* 906 F.2d 1234, 1237 (8th Cir.1990). In reviewing the record, the court must view all the facts in the light most favorable to the nonmoving party and give that party the benefit of all reasonable inferences that can be drawn from the facts. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Quick,* 90 F.3d at 1377 (same).

Procedurally, the moving party bears "the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record which show lack of a genuine issue." *Hartnagel v. Norman,* 953 F.2d 394, 395 (8th Cir.1992) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)); *see also Rose–Maston v. NME Hosps., Inc.,* 133 F.3d 1104, 1107 (8th Cir.1998); *Reed v. Woodruff County, Ark.,* 7 F.3d 808, 810 (8th Cir. 1993). When a moving party has carried its burden under Rule 56(c), the party opposing summary judgment is required under Rule 56(e) to go beyond the pleadings, and by affidavits, or by the "depositions, answers to interrogatories, and admissions on file," designate "specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e); *Celotex,* 477 U.S. at 324, 106 S.Ct. 2548; *Rabushka ex. rel. United States v. Crane Co.,* 122 F.3d 559, 562 (8th Cir.1997), *cert. denied,* 523 U.S. 1040, 118 S.Ct. 1336, 140 L.Ed.2d 498 (1998); *McLaughlin v. Esselte Pendaflex Corp.,* 50 F.3d 507, 511 (8th Cir.1995); *Beyerbach v. Sears,* 49 F.3d 1324, 1325 (8th Cir.1995). An issue of material fact is "genuine" if it has a real basis in the record. *Hartnagel,* 953 F.2d at 394 (citing *Matsushita Elec. Indus. Co.,* 475 U.S. at 586–87, 106 S.Ct. 1348). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment," *i.e.,* are "material." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Beyerbach,* 49 F.3d at 1326; *Hartnagel,* 953 F.2d at 394. Thus, contrary to Bunda's contentions, the plaintiff does bear a significant burden on a motion for summary judg-

ment, at least once the defendants have met their initial burden.

If a party fails to make a sufficient showing of an essential element of a claim with respect to which that party has the burden of proof, then the opposing party is "entitled to judgment as a matter of law." *Celotex Corp.*, 477 U.S. at 323, 106 S.Ct. 2548; *In re Temporomandibular Joint (TMJ) Implants Prod. Liab. Litig.*, 113 F.3d 1484, 1492 (8th Cir.1997). Ultimately, the necessary proof that the nonmoving party must produce is not precisely measurable, but the evidence must be "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Allison v. Flexway Trucking, Inc.*, 28 F.3d 64, 66 (8th Cir.1994). Finally, this court has repeatedly taken note of the rule in this circuit that, because summary judgment often turns on inferences from the record, summary judgment should seldom or rarely be granted in employment discrimination cases. *See, e.g., Crawford v. Runyon,* 37 F.3d 1338, 1341 (8th Cir.1994) (citing *Johnson v. Minnesota Historical Soc'y,* 931 F.2d 1239, 1244 (8th Cir.1991)).

The court will apply these standards to the motion for summary judgment by the defendants on Bunda's sexually hostile environment and retaliation claims. However, the court will first address the defendants' contention that portions of Bunda's statement of facts in resistance to their motion for summary judgment do not adequately identify the basis in the record for factual disputes.

While the court's review of Bunda's statement of facts and record citations reveals that Bunda has not always indicated *sentence by sentence* the portions of the record supporting her statements of disputed facts, she has nevertheless cited in close proximity to her statements of factual disputes specific portions of the record upon which those disputes are based. Moreover, some of the disputed facts are supported by prior citations, which Bunda might have been wise to repeat, but which would not have escaped the attention of a careful reader. Thus, nothing in Bunda's statement of facts is as wholly unsupported as the defendants suggest. Therefore, the court will deny the defendants' motion to strike portions of Bunda's statement of facts, because the court finds Bunda's responses to the defendants' factual statements to satisfy the spirit, if not the precise letter, of the local rule regarding responses to factual statements on a summary judgment motion. *See* N.D. IA. L.R. 56.1(b)(4). The court does, however, caution all litigants that the more carefully they adhere to this particular local rule, the more effective their advocacy becomes, and where the court cannot glean adequate support for a factual assertion from a litigant's statement of disputed facts, owing to careless or missing citations to the record, the consequences for that litigant's position could be dire.

### *B. Proper Defendants*

#### *1. Arguments of the parties*

In one of the few arguments by the defendants in their summary judgment motion that is both on point and potentially meritorious, the defendants assert that the only proper defendant in this action is John E. Potter, and only in his official capacity as Postmaster General. The defendants contend that, not only has the Eighth Circuit Court of Appeals so held, but that the Eighth Circuit Court of Appeals has also held that supervisors are not individually liable under Title VII, so that neither the USPS nor Davidson is a proper defendant in this action. Bunda acknowledges that the Postmaster General is the proper defendant for her Title VII claim, rather than the USPS. However,

she contends that, while the Eighth Circuit Court of Appeals has held that supervisors cannot be held individually liable under Title VII, supervisors are nevertheless proper defendants, because their liability as employees is imputed to their employer.

*2. **Analysis***

■ The court agrees that "[t]he Postmaster General is the only properly named defendant in an employment discrimination suit against the Postal Service." *Morgan v. United States Postal Service,* 798 F.2d 1162, 1165 n. 3 (8th Cir.1986); *see also* 42 U.S.C. § 2000e–16(c) (in a civil action by a federal employee pursuant to Title VII, "the head of the department, agency, or unit, as appropriate, shall be the defendant"). That fact was not changed by the "sue and be sued" provision of the Postal Reorganization Act of 1970. *See Loeffler v. Tisch,* 806 F.2d 817, 819 (8th Cir.1986), *rev'd on other grounds sub nom. Loeffler v. Frank,* 486 U.S. 549, 108 S.Ct. 1965, 100 L.Ed.2d 549 (1988). Thus, while Postmaster General John E. Potter is a proper defendant, as the head of the USPS, the USPS itself is not a proper defendant.

Moreover, the Eighth Circuit Court of Appeals has explicitly and repeatedly held that supervisors cannot be held individually liable under Title VII. *Schoffstall v. Henderson,* 223 F.3d 818, 821 n. 2 (8th Cir.2000); *Bales v. Wal–Mart Stores, Inc.,* 143 F.3d 1103, 1111 (8th Cir.1998); *Bonomolo–Hagen v. Clay Central–Everly Community Sch. Dist.,* 121 F.3d 446, 447 (8th Cir.1997); *Spencer v. Ripley County State Bank,* 123 F.3d 690, 691–92 (8th Cir.1997) (*per curiam*). However, Bunda contends that, in *Bales,* the Eighth Circuit Court of Appeals cited with approval the decision of the District of Columbia Circuit Court of Appeals in *Gary v. Long,* 59 F.3d 1391 (D.C.Cir.), *cert. denied,* 516 U.S. 1011, 116 S.Ct. 569, 133 L.Ed.2d 493 (1995), which held that " 'while a supervisory employee may be joined as a party defendant in a Title VII action, that employee must be viewed as being sued in his capacity as the agent of the employer, who is alone liable for a violation of Title VII.' " *Bales,* 143 F.3d at 1111 (quoting this statement in a parenthetical to a citation to *Gary,* 59 F.3d at 1399). Based on this citation, Bunda argues that Davidson is still a proper defendant, even if he cannot be held individually liable. While Bunda's argument might have merit in an action against some supervisory employee of a private sector or state employer, in the present circumstances, where the action is against a federal agency, an applicable statute expressly provides that "the head of the department, agency, or unit, as appropriate, shall be the defendant." 42 U.S.C. § 2000e–16(c). The court reads this language to bar naming individual employees of such departments, agencies, or units as defendants. Furthermore, no purpose would be served by Davidson remaining a defendant in this case, where the Postmaster will ultimately be vicariously liable for his harassment, if any. *See Gary,* 59 F.3d at 1399 (recognizing that the employer is "alone liable for the violation of Title VII" arising from harassment by a supervisor). Davidson also is not a proper defendant in this case.

Therefore, the defendants' motion for summary judgment will be granted to the extent that the USPS and Ray Davidson will be dismissed as defendants. This action shall proceed only against the Postmaster General, as the head of the federal agency employing Bunda, and the Postmaster General may be held liable for harassment, if any, by Davidson. 42 U.S.C. § 2000e–16(c). The court will hereinafter identify the Postmaster as the only defendant and only movant for summary judgment.

### C. Punitive Damages Against A Federal Agency

The second portion of the Postmaster's motion for summary judgment that the court finds is both on point and potentially meritorious is his contention that a governmental agency, such as the USPS, is not subject to punitive damages for discrimination in violation of Title VII. Bunda concedes this point, as well she must. The statutory provision authorizing punitive damages in such cases expressly precludes punitive damages for "government agencies." 42 U.S.C. § 1981a(b)(1) ("A complaining party may recover punitive damages under this section against a respondent (*other than a government, government agency or political subdivision*)....") (emphasis added); *see also Robinson v. Runyon,* 149 F.3d 507, 516 (6th Cir.1998) ("It is ... clear that the Postal Service is a government agency for purposes of Title VII and accordingly we follow the Seventh Circuit in finding that as such the Postal Service is exempt from punitive damages. *See Baker [v. Runyon],* 114 F.3d [668,] 671–72 [(7th Cir. 1997)]."); *Baker,* 114 F.3d at 671–72. Therefore, the Postmaster is entitled to summary judgment on Bunda's prayer for punitive damages.

### D. Bunda's Hostile Environment Claim

The Postmaster has also moved for summary judgment on Bunda's hostile environment claim. The court finds considerably less merit in this part of the Postmaster's motion.

#### 1. Arguments of the parties

In a sprawling, sometimes nearly incoherent brief in support of his motion for summary judgment on Bunda's hostile environment claim, the Postmaster presses arguments and standards that are at best confused and often inapposite. The court has gleaned the following arguments, pertinent and otherwise, from the Postmaster's brief in support of his motion for summary judgment on Bunda's sexually hostile environment claim.

Although not in the sensible relationship suggested here, the Postmaster contends that Bunda failed to exhaust her administrative remedies, because she did not file a timely administrative complaint for harassment allegedly suffered in 1999, and the incidents in 1999 were not part of a "continuing violation" with the incidents in 2000. As to the "continuing violation" issue, the Postmaster contends that there was a break between the two periods of harassment and that the physical harassment in 1999 was not substantially similar to the verbal and job-assignment harassment in 2000, even where Davidson was the harasser during both time periods.

The Postmaster inexplicably asserts that Bunda cannot generate genuine issues of material fact in support of a purported "gender discrimination" claim, on the basis of failure to prove the elements of a "disparate treatment" claim, notwithstanding that the Postmaster repeatedly acknowledged in his statement of material undisputed facts and in the factual statement in his brief that Bunda is alleging hostile environment sexual harassment by Davidson. More specifically, but no more pertinently, the Postmaster asserts that Bunda cannot demonstrate either adverse employment action, where she continues to be employed by the USPS and, indeed, has obtained a promotion, nor can she demonstrate that she was treated differently than similarly situated males. The Postmaster also contends that the USPS responded adequately to Bunda's claims of sexual harassment by investigating those claims, when Bunda actually brought them to the attention of supervisors or managers of the Fort Dodge Post Office.

Considerably later in his brief, the Postmaster also contends that there is no evidence of a causal connection between any "sexual harassment" and Bunda's alleged emotional distress and that evidence of specific emotional and physical injuries that Bunda purportedly suffered is "uncollaborated" or otherwise insufficient. However, in this part of his brief, the Postmaster, again inexplicably, relies on standards for a state-law claim of intentional infliction of emotional distress, instead of or in confused conjunction with the standards for recovery of emotional distress *damages* on a sexual harassment claim under Title VII.

In resistance to the Postmaster's motion for summary judgment on her hostile environment sexual harassment claim, Bunda asserts that she completed the administrative process on this claim, precisely because the harassment in 1999 and 2000 was all part of a "continuing violation." She points out that the Postmaster does not contend that her administrative complaint was untimely as to the incidents of harassment in 2000, and that it plainly was timely as to those incidents. She contends that the timely administrative complaint as to the 2000 incidents thus encompasses all of the incidents of the "continuing violation" including the earlier incidents. Even if she cannot show a "continuing violation," however, Bunda contends that the 1999 incidents are still admissible to provide relevant background to the harassment in 2000, even if she cannot recover damages for the 1999 incidents. She also contends, contrary to the Postmaster's assertions, that the record shows that she repeatedly complained about Davidson's harassment, but that higher-level supervisors were largely unresponsive, and that when they did respond, their responses were insufficient to put an end to the harassment.

Bunda also points out that her "discrimination" claim is not a disparate treatment claim, but a claim of hostile environment sexual harassment. Thus, she asserts that she is not required to prove that she suffered an "adverse employment action," such as termination, failure to promote, or other change in pay or benefits. Rather she contends that she must, and she can, generate a genuine issue of material fact that the environment to which she was subjected involved harassment that was sufficiently severe or pervasive to alter the terms or conditions of her employment. She also contends that she is not required to prove that similarly situated males were treated differently. She contends that she has generated genuine issues of material fact on each of the elements of a hostile environment claim. Finally, she contends that whether or not there is sufficient evidence in the record to justify emotional distress damages for harassment is particularly within the province of the jury.

In his reply, the Postmaster misconstrues Bunda's argument to be that whether or not the environment to which she was subjected was sufficiently severe or pervasive must be decided by a jury.[2] However, the Postmaster correctly asserts that whether or not harassment is sufficiently severe or pervasive to be actionable can be determined on a motion for summary judgment. For the first time in his extensive briefing, the Postmaster argues that the harassment to which Bunda was subjected was not sufficiently severe or pervasive to be actionable.

2. This argument suggests that the Postmaster has confused the "severe or pervasive" harassment issue with the issue of whether or not the harassment caused emotional distress. However, whether harassment is actionable and whether it caused emotional distress are separate issues, one pertaining to whether or not there was a violation of Title VII, and the other pertaining to what damages, if any, were caused by that violation.

2. *Analysis*

a. *Nature of the claim*

It is difficult for the court to imagine that there could be any confusion about the nature of Bunda's "discrimination" claim: It plainly is *not* a claim of "disparate treatment," but a claim of hostile environment sexual harassment, as the allegations of fact in the Complaint make abundantly clear. *See* Complaint, ¶¶ 10 (alleging that Davidson "created a sexually hostile environment by consistently sexually harassing the plaintiff" and that such "sexual harassment" was directed at the plaintiff); 11 (again referring to Davidson's actions as "sex harassment"); (12) (the "sex harassment" was sufficiently severe or pervasive that a reasonable person would find the work environment "hostile"); (13) (Bunda believed that Davidson's "sexual harassment" made her work environment abusive); (14) (the Postmaster knew or should have know that Davidson's "sex harassment created a hostile environment"); (15) (the defendant failed to take corrective action to end the "harassment"); *see also id.* at ¶ 17 (incorporating the preceding paragraphs into the "First Cause Of Action"); 18 (describing the previously alleged conduct as "discriminatory action"). Thus, the question is whether Bunda can make the showings required to defeat summary judgment on a hostile environment sexual harassment claim, not on some disparate treatment claim not at issue here.

b. ***Failure to exhaust administrative remedies and continuing violations***

One of the showings that Bunda must make is that she has exhausted administrative remedies for her sexual harassment claim. The Postmaster contends that Bunda's harassment claim, or at least part of it, is barred, because she failed to exhaust administrative remedies, where she purportedly did not file a timely administrative complaint concerning the 1999 incidents of alleged harassment. The Postmaster also contends, separately, that Bunda failed to demonstrate that the 1999 and 2000 incidents of alleged harassment were part of a "continuing violation." The court concludes that these two issues, "exhaustion" and "continuing violation," are necessarily intertwined.

*i.* ***The exhaustion requirement.*** The Postmaster is correct that federal employees, and more particularly, postal employees, asserting Title VII claims must exhaust their administrative remedies before filing an action in federal court, and if they choose to proceed with certain optional administrative remedies, they must exhaust their claims in that forum before filing a civil action. *Bailey v. United States Postal Serv.,* 208 F.3d 652, 654 (8th Cir.2000); *McAdams v. Reno,* 64 F.3d 1137, 1141–42 (8th Cir.1995). Among such administrative remedies is an EEOC regulation mandating that the aggrieved employee "initiate contact with a[n] [EEO] Counselor" within 45 days of the alleged discrimination in order to attempt an informal resolution. 29 C.F.R. § 1614.105(a)(1); *see Burkett v. Glickman,* 327 F.3d 658, 660 (8th Cir.2003) (citing this regulation in the case of an employee of the USDA); *Patrick v. Henderson,* 255 F.3d 914, 915 (8th Cir.2001) (citing the same regulation for a postal employee); *Bailey,* 208 F.3d at 654 (also citing this regulation for a postal employee). Here, the Postmaster contends that Bunda did not initiate contact with an EEO Counselor until August 7, 2000, which means that she did not make a timely contact with the EEO Counselor concerning alleged harassment in 1999. Under such circumstances, the Postmaster contends that Bunda has not exhausted administrative remedies as to harassment in 1999. Bunda disagrees, because she contends that the 1999 inci-

dents were part of a "continuing violation" with the 2000 incidents, so that her timely complaint about the 2000 incidents allows her to proceed on the 1999 incidents as well.

■ *ii. **Morgan, exhaustion, and continuing violations.*** The Eighth Circuit Court of Appeals explained that, in its decision in *National R.R. Passenger Corp. v. Morgan,* 536 U.S. 101, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002), the Supreme Court "addressed what constitutes the timely filing of Title VII claims" and "[i]n particular, the Court clarified the use of the continuing violation doctrine in Title VII hostile environment cases." *Jensen v. Henderson,* 315 F.3d 854, 858 (8th Cir. 2002). In essence, the Eighth Circuit Court of Appeals read *Morgan* to "view allegations of hostile work environment as 'a single unlawful employment practice,'" and that "[o]nly the smallest portion of that 'practice' needs to occur within the limitations period for the claim to be timely." *Id.* at 859 (quoting *Morgan,* 536 U.S. at 117, 122 S.Ct. 2061). The Eighth Circuit Court of Appeals has also held that it is "plain that the principles [concerning continuing violations] set forth [in *Morgan* ] govern cases involving the 45-day deadline for federal workers' claims." *Burkett,* 327 F.3d at 660. Thus, Bunda is only required to generate a genuine issue of material fact that the harassment in 1999 is part of a "continuing violation" with the harassment in 2000, which was the subject of a timely contact with an EEO Counselor, to establish that she has exhausted her administrative remedies as to the whole of the alleged harassment.

■ ***iii. Was there a "continuing violation"?*** The recent decision of the Eighth Circuit Court of Appeals in *Rowe v. Hussmann Corp.,* 381 F.3d 775 (8th Cir. 2004), demonstrates what constitutes a "continuing violation" of sexual harassment under *Morgan.* In *Rowe,* the court noted that even a lengthy hiatus in harassment does not necessarily establish that pre-limitations period and post-limitations period harassment are not part of a "continuing violation." *Rowe,* 381 F.3d at 780. Indeed, the court pointed out that, "[i]n *Morgan,* the Supreme Court noted that where acts contributing to a hostile work environment occur on days 1–100 and day 401, 'it does not matter whether nothing occurred within the intervening 301 days so long as each act is part of the whole.'" *Id.* (quoting *Morgan,* 536 U.S. at 118, 122 S.Ct. 2061). Rather, more pertinent factors were whether the same harasser committed the same harassing acts before and after the limitations deadline; whether the employer was made aware of the earlier harassment; and whether there was any "intervening action" by the employer that could fairly be said to have caused the later acts of harassment to be unrelated to the earlier, otherwise untimely acts. *Id.* at 781. In *Rowe,* the court concluded "as a matter of law that the acts before and after the limitations period were so similar in nature, frequency, and severity that they must be considered to be part and parcel of the hostile work environment that constituted the unlawful employment practice that gave rise to this action." *Id.*

Contrary to the Postmaster's contention, any supposed hiatus between the 1999 harassment and the 2000 harassment does not establish that the two periods of harassment are not part of the same unlawful employment practice. *Id.* at 780. Moreover, taking the record evidence in the light most favorable to Bunda, she has generated genuine issues of material fact that the harassment by Davidson was continuous, not in two distinct periods. *Cf. id.* (taking the evidence in the light most favorable to the plaintiff, there was, at most, a seven-month hiatus in the harassing acts). Bunda alleges, and the record evidence reasonably suggests, that the same

harasser throughout was Davidson, and that much of the harassment was of the same "nature," even if it did not always involve physical contact, such as pinching Bunda's buttocks or rubbing against her. *See id.* at 781 (considering the identity of the harasser and nature of the harassment before and after the limitations deadline). Even if one reads the record to suggest that there was no physical harassment after 1999—a reading to which the court does not necessarily subscribe—a reasonable juror could find that many of the comments that Davidson continued to make were in the same vein, in that they involved references to Bunda's appearance and Davidson's desire for a sexual relationship with her. Indeed, the court cannot imagine that continuous sexual harassment by the same harasser could be construed *not to be* part of the same unlawful practice, simply because the harasser might be wise enough to change the nature of his harassment periodically from physical to verbal harassment. Bunda has also generated genuine issues of material fact that Bunda's employer was made aware of the earlier harassment, but that any "intervening action" by her employer cannot be said to have caused the later acts of harassment to be unrelated to the earlier ones, where the evidence to which she points reasonably suggests only that Davidson may have stopped physical harassment, but was not deterred from continuing other forms of harassment. *See id.* at 781 (also considering these factors). While not prepared to so hold as a matter of law, there are certainly genuine issues of material fact for a jury to decide as to whether or not "the acts before and after the limitations period were so similar in nature, frequency, and severity that they must be considered to be part and parcel of the hostile work environment that constituted the unlawful employment practice that gave rise to this action." *Cf. id.* (so holding as a matter of law in the case then before the court).

Therefore, those parts of the Postmaster's motion for summary judgment on Bunda's hostile environment claim asserting that Bunda failed to exhaust her administrative remedies, and failed to establish a "continuing violation," as to the 1999 incidents of harassment will also be denied. Consequently, the court turns to the question of whether Bunda has met the requirements to defeat summary judgment on the merits of her hostile environment claim.

### c. *The required showings on the merits*

■ ***i. The prima facie case.*** As the Eighth Circuit Court of Appeals has repeatedly explained, to establish a *prima facie* case of sexual harassment, in order to defeat a motion for summary judgment, the plaintiff must show the following: (1) he or she was a member of a protected group, that is, male or female; (2) he or she was subjected to unwelcome harassment; (3) the harassment was based on sex; (4) the harassment affected a term, condition, or privilege of employment; and (5) there is a basis for imposing liability on the employer for harassment. *Kratzer v. Rockwell Collins, Inc.,* 398 F.3d 1040, 1047 (8th Cir.2005); *Pedroza v. Cintas Corp. No. 2,* 397 F.3d 1063, 1068 (8th Cir.2005); *Erenberg v. Methodist Hosp.,* 357 F.3d 787, 792 (8th Cir.2004). Thus, contrary to the defendants' arguments, Bunda is not required to show that similarly situated males were not subjected to the same harassment she endured. Such an element is pertinent to a disparate treatment claim of sexual discrimination, but not to a hostile environment claim. *See, e.g., Kratzer,* 398 F.3d at 1046 (to establish a *prima facie* case of disparate treatment sex discrimination, the plaintiff must show "mem-

bership in a protected group; qualification and application for an available position; rejection; and [selection] of an employee similarly situated but not a member of the protected group"); *Hesse v. Avis Rent A Car Sys., Inc.*, 394 F.3d 624, 631 (8th Cir.2005) (to state a *prima facie* case of disparate treatment gender discrimination, the plaintiff must "demonstrate that she (1) is a member of a protected class; (2) was qualified to perform her job; (3) suffered an adverse employment action; and (4) was treated differently from similarly situated males").

■ ***ii. Actionable harassment.*** The Postmaster's contention that Bunda's claim fails as a matter of law, because she suffered no "adverse employment action," such as a termination or other significant change in position, pay, or benefits, demonstrates, once again, that the Postmaster has mistaken the nature of Bunda's claim and the nature of "actionable" sexual harassment. The Postmaster is correct that an "adverse employment action" includes such things as a termination, a failure to obtain a promotion, or a change of pay or benefits. *See, e.g., Pedroza v. Cintas Corp. No. 2*, 397 F.3d 1063, 1071 (8th Cir.2005) ("adverse employment action" consists of such things as a diminution of pay or benefits, or an adverse change in working conditions); *Okruhlik v. University of Arkansas*, 395 F.3d 872, 879 (8th Cir.2005) ("A plaintiff suffers an adverse employment action when the action results in a 'material employment disadvantage' such as '[t]ermination, reduction in pay or benefits, and changes in employment that significantly affect an employee's future career prospects.'") (quoting *Duncan v. Delta Consol. Indus.*, 371 F.3d 1020, 1026 (8th Cir.2004), in turn quoting *Spears v. Missouri Dep't of Corrections & Human Res.*, 210 F.3d 850, 853 (8th Cir.2000)). However, the fourth element of a hostile environment claim is not cast in terms of proof of an "adverse employment action," but in terms of proof that "the harassment affected a term, condition, or privilege of employment." *Kratzer*, 398 F.3d at 1047. Thus, while an "adverse employment action" requirement is pertinent to a disparate treatment claim of sexual discrimination, *see, e.g., Hesse*, 394 F.3d at 631 (to state a *prima facie* case of disparate treatment gender discrimination, the plaintiff must, *inter alia*, "demonstrate that she ... suffered an adverse employment action"), or to a retaliation claim, *see infra*, Section II.E.2.a, when a hostile environment claim is at issue, it is the hostile environment itself that is the adverse change in the terms or conditions of the plaintiff's employment, which makes harassment "actionable" under Title VII. *Kratzer*, 398 F.3d at 1047.

■ The Eighth Circuit Court of Appeals has explained that the "actionable harassment" element requires "a twofold inquiry":

> First, the harassment must be sufficiently severe or pervasive to create an "objectively hostile" work environment. *Henthorn v. Capitol Communications, Inc.*, 359 F.3d 1021, 1026 (8th Cir. 2004).... Second, if the victim does not subjectively perceive the environment as abusive, then the conduct has not altered the conditions of employment. *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21–22, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993).

*Kratzer*, 398 F.3d at 1047. The two prongs of the proper inquiry require some deeper consideration in this case.

As to the first prong of the inquiry, whether or not the environment was "objectively hostile,"

> [the environment] must be more than merely offensive, immature or unprofessional; it must be extreme. *Id.* at 1027, citing *Alagna v. Smithville R–II Sch. Dist.*, 324 F.3d 975, 980 (8th Cir.2003).

> Conduct that does not exceed the threshold of severity is insufficient to create a prima facie case of sexual harassment. "Title VII was not designed to create a federal remedy for all offensive language and conduct in the workplace." *Scusa v. Nestle U.S.A. Co., Inc.*, 181 F.3d 958, 967 (8th Cir.1999).

*Kratzer*, 398 F.3d at 1047. To put it another way,

> "Sexual harassment 'standards are demanding—to be actionable, conduct must be extreme and not merely rude or unpleasant.'" *Tuggle [v. Mangan]*, 348 F.3d [714,] 720 [ (8th Cir.2003) ] (quoting *Alagna v. Smithville R–II Sch. Dist.*, 324 F.3d 975, 980 (8th Cir.2003)). " 'More than a few isolated incidents are required,' and the alleged harassment must be 'so intimidating, offensive, or hostile that it poisoned the work environment.'" *Id.* (quoting *Scusa v. Nestle U.S.A. Co.*, 181 F.3d 958, 967 (8th Cir. 1999)). [The plaintiff] must prove [her] workplace was "permeated with discriminatory intimidation, ridicule, and insult." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993).

*LeGrand v. Area Resources for Community and Human Servs.*, 394 F.3d 1098, 1101–02 (8th Cir.2005).

Determination of whether or not an environment was "objectively hostile" is "a fact-intensive inquiry." *See Moring v. Arkansas Dep't of Correction*, 243 F.3d at 452, 456 (8th Cir.2001) (citing *Bales v. Wal–Mart Stores, Inc.*, 143 F.3d 1103, 1109 (8th Cir.1998)). Although a single offensive utterance or exposure to distasteful conduct ordinarily does not rise to the level of a Title VII violation, *see Hathaway v. Runyon*, 132 F.3d 1214, 1221 (8th Cir. 1997), there is no "rule of law holding that a single incident can never be sufficiently severe to be hostile-work-environment sexual harassment." *Moring*, 243 F.3d at 456. Thus, "[w]hether an environment was objectively hostile or abusive must be judged by looking at the totality of the circumstances, including the frequency and severity of the discriminatory conduct, whether such conduct was physically threatening or humiliating, as opposed to a mere offensive utterance, and whether the conduct unreasonably interfered with the employee's work performance." *Eliserio v. United Steelworkers of Am. Local 310*, 398 F.3d 1071, 1076 (8th Cir.2005); *LeGrand*, 394 F.3d at 1102 (same factors).

As to the second prong of the inquiry, whether or not the environment was "subjectively hostile," " 'if the victim does not subjectively perceive the environment to be abusive, the conduct has not actually altered the conditions of the victim's employment, and there is no Title VII violation.'" *Woodland v. Joseph T. Ryerson & Son, Inc.*, 302 F.3d 839, 843 (8th Cir.2002) (quoting *Harris*, 510 U.S. at 21, 114 S.Ct. 367); *accord Kratzer*, 398 F.3d at 1047 (also citing *Harris* ). "[A]n employee's admission that [the environment] was not abusive is fatal to the employee's Title VII sexual harassment claim." *Kratzer*, 398 F.3d at 1047 (citing *Montandon v. Farmland Ind., Inc.*, 116 F.3d 355 (8th Cir. 1997), and *Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 271, 121 S.Ct. 1508, 149 L.Ed.2d 509 (2001)).

The Postmaster made no pertinent arguments in his opening brief regarding whether or not the harassment Bunda suffered from Davidson was sufficiently "severe or pervasive" to be "actionable," and the court need not consider an issue raised for the first time in a reply. *See* N.D. IA. L.R. 7.1(g); *Lorenzen v. GKN Armstrong Wheels, Inc.*, 345 F.Supp.2d 977, 992 n. 4 (N.D.Iowa 2004); *Baker v. John Morrell & Co.*, 263 F.Supp.2d 1161, 1169 n. 1 (N.D.Iowa 2003); *see also Republican Party of Minn. v. Kelly*, 247 F.3d 854, 881

(8th Cir.2001) ("It is well established that issues not argued in an opening brief cannot be raised for the first time in a reply brief," citing *United States v. Vincent,* 167 F.3d 428, 432 (8th Cir.), *cert. denied,* 528 U.S. 848, 120 S.Ct. 124, 145 L.Ed.2d 105 (1999); *South Dakota Mining Ass'n v. Lawrence County,* 155 F.3d 1005, 1011 (8th Cir.1998); *United States v. Davis,* 52 F.3d 781, 783 (8th Cir.1995); *French v. Beard,* 993 F.2d 160, 161 (8th Cir.1993), *cert. denied,* 510 U.S. 1051, 114 S.Ct. 706, 126 L.Ed.2d 672 (1994)).

Nevertheless, even if the court were to consider the Postmaster's belated assertion that Bunda has not generated a genuine issue of material fact that she suffered "actionable" harassment, the court would reject such an argument. The court's review of the record, in the light most favorable to Bunda, shows that Bunda has pointed to evidence that she was subjected to nearly continuous harassment by Davidson from about 1998 or 1999 through at least 2000, which began with pinching and other unwanted physical contact, and continued with lewd comments, propositions, what she describes as "stalking," both in and out of the workplace, and harassment about job assignments and job performance. Under the circumstances, the court concludes that such harassment was sufficient to be actionable: The comments and other conduct were not merely offensive, immature, unprofessional, rude, and unpleasant, *see Kratzer,* 398 F.3d at 1047 (comments of such character are insufficient to create a hostile environment); *LeGrand,* 394 F.3d at 1101–02 (same), but sexually-charged, continuous, and sometimes physically threatening or accompanied by unwanted physical contact, to the point where a reasonable juror could conclude that they interfered with Bunda's work performance and emotional state. *See Eliserio,* 398 F.3d at 1076 (identifying such factors); *LeGrand,* 394 F.3d at 1102 (same factors). Bunda certainly found them so. *See Kratzer,* 398 F.3d at 1047 (the environment must be both "objectively" and "subjectively" hostile to be actionable). Therefore, contrary to the Postmaster's contentions, Bunda has stated a claim of "actionable" hostile environment sexual harassment.

***d. Adequacy of the employer's response***

Apparently blissfully ignorant of the difference in the standards for employer liability for harassment by a co-worker or harassment by a supervisor, the Postmaster contends that Bunda's harassment claim should also fail, because the USPS took adequate remedial action when Bunda actually complained about harassment. Again, this portion of the Postmaster's motion for summary judgment is seriously flawed.

■ ***i. Standards for employer liability.*** As explained above, the fifth element that the plaintiff must show to defeat summary judgment on a hostile environment harassment claim is that there is a basis for imposing liability on the employer for harassment. *Kratzer,* 398 F.3d at 1047; *Pedroza,* 397 F.3d at 1068; *Erenberg,* 357 F.3d at 792. In the case of co-worker harassment, this fifth element requires a showing that the employer "knew or should have known of the harassment and failed to take proper remedial action." *Kratzer,* 398 F.3d at 1047; *Pedroza,* 397 F.3d at 1068; *Erenberg,* 357 F.3d at 792. The court must "consider several factors in assessing the reasonableness of an employer's remedial measures: the temporal proximity between the notice and remedial action, the disciplinary or preventive measures taken, and whether the measures ended the harassment." *Meriwether v. Caraustar Packaging Co.,* 326 F.3d 990, 994 (8th Cir.2003) (citing *Stuart v. Gen.*

*Motors Corp.*, 217 F.3d 621, 633 (8th Cir. 2000)).

However, where the alleged harassment was by a supervisor, employer liability is analyzed under the standards set forth by the Supreme Court in *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998), and *Faragher v. City of Boca Raton*, 524 U.S. 775, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998). *McCurdy v. Arkansas State Police*, 375 F.3d 762, 770 (8th Cir.2004).

The Eighth Circuit Court of Appeals recently explained the *Ellerth/Faragher* standards for employer liability for harassment by a supervisor as follows:

> [T]he Court announced its holding [in *Ellerth* and *Faragher* ]:
>
> > An employer is subject to vicarious liability to a victimized employee for an actionable hostile environment created by a supervisor with immediate (or successively higher) authority over the employee. When no tangible employment action is taken, a defending employer may raise an affirmative defense to liability or damages, which comprises two necessary elements: (a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise.
>
> [*Ellerth* ], [524 U.S.] at 764–65, 118 S.Ct. 2257, 141 L.Ed.2d 633; *Faragher*, 524 U.S. at 807, 118 S.Ct. 2275, 141 L.Ed.2d 662. The Court accentuated that "[n]o affirmative defense is available, however, when the supervisor's harassment culminates in a tangible employment action, such as discharge, demotion, or undesirable reassignment." *Ellerth*, 524 U.S. at 765, 118 S.Ct. 2257, 141 L.Ed.2d 633; *Faragher*, 524 U.S. at 808, 118 S.Ct. 2275, 141 L.Ed.2d 662; *see also Pa. State Police v. Suders*, 542 U.S. 129, 124 S.Ct. 2342, 2352, 159 L.Ed.2d 204 (2004) (recognizing *Ellerth* and *Faragher*, which govern employer liability for supervisor sexual harassment, "delineate[d] two categories of hostile work environment claims: (1) harassment that 'culminates in a tangible employment action,' for which employers are strictly liable, and (2) harassment that takes place in the absence of a tangible employment action, to which employers may assert an affirmative defense") (citation omitted).

*McCurdy*, 375 F.3d at 770.

The Postmaster's argument that he is entitled to summary judgment on Bunda's harassment claim addresses, at best, only part of the applicable standard for employer liability, where the harasser, Davidson, may have been only a co-worker at the time of the alleged harassment in 1999, but was a supervisory employee at the time of a substantial part of the alleged harassment in 2000. Therefore, the court must apply both the "co-worker" and the "supervisor" standards for employer liability.

***ii. Application of the standards.*** The court concludes that the Postmaster is not entitled to summary judgment on employer liability, whether Davidson was a co-worker or supervisor at the time of the harassment. First, if Davidson was merely a co-worker, Bunda has come forward with sufficient evidence to generate a genuine issue of material fact that the USPS was both aware of Davidson's harassment and failed to respond to that harassment adequately. *See Kratzer*, 398 F.3d at 1047 (if the harasser was a co-worker, the employer is liable if the employer "knew or should have known of the harassment and failed to take proper remedial action"); *Pedroza*, 397 F.3d at 1068 (same); *Eren-*

*berg,* 357 F.3d at 792 (same). Considering the pertinent factors for assessing the reasonableness of the employer's response, *see Meriwether,* 326 F.3d at 994 (the pertinent factors are "the temporal proximity between the notice and remedial action, the disciplinary or preventive measures taken, and whether the measures ended the harassment"), it is clear that Bunda has generated genuine issues of material fact that the USPS's response was insufficient: Bunda has pointed to evidence that she made frequent complaints about Davidson's harassment, but that those complaints either fell on deaf ears, resulted in only token responses, or resulted in responses that were wholly ineffectual in stopping Davidson's harassment. Thus, there are genuine issues of material fact as to whether the employer is liable for Davidson's co-worker harassment.

There are also genuine issues of material fact as to whether the employer is liable for Davidson's supervisory harassment. Because there is no suggestion that Davidson's supervisory harassment resulted in a "tangible employment action," the Postmaster is liable for Davidson's supervisory harassment subject to proof of the *Ellerth/Faragher* affirmative defense. *McCurdy,* 375 F.3d at 770. That defense requires *the Postmaster* to prove " '(a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise.' " *Id.* (quoting *Ellerth,* 524 U.S. at 764–65, 118 S.Ct. 2257; *Faragher,* 524 U.S. at 807, 118 S.Ct. 2275). The Postmaster's motion for summary judgment addresses, at best, only one prong of this defense. On the other hand, Bunda has generated genuine issues of material fact in her favor on both prongs. First, she has pointed to evidence from which a reasonable jury could conclude that her employer did *not* "correct promptly any sexually harassing behavior," *id.,* where the evidence reasonably suggests that the employer's actions in response to Davidson's harassment was limited and ineffectual. Second, she has generated a genuine issue of material fact that she did not "unreasonably fail[ ] to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise," *id.,* where the evidence to which she points again reasonably suggests that she was not shy about complaining to supervisors and the EEO Counselor about harassment, nor was she shy about complaining straight to Davidson about his conduct.

Therefore, the Postmaster is not entitled to summary judgment on Bunda's harassment claim on the ground that the USPS took adequate steps to remedy harassment or on the broader ground that there is no showing of an adequate basis for employer liability.

***e. Damages for emotional distress***

The last challenge the Postmaster raises to Bunda's harassment claim is that she has failed to generate genuine issues of material fact on the sufficiency of any emotional distress or that any such emotional distress was causally related to the sexual harassment. The court finds this contention equally unsatisfactory, not least because it is based on a bewildering combination of standards for a state-law tort claim of intentional infliction of emotional distress, and actually pertinent standards for emotional distress *damages* in a Title VII case. Thus, the court begins with a survey of the standards actually applicable to Bunda's prayer for emotional distress damages for sexual harassment.

***i. Standards for emotional distress damages.*** In a Title VII case, "[c]ompensatory damages for emotional distress

must be supported by 'competent evidence of a genuine injury,' and a plaintiff's own testimony can carry this burden." *Rowe,* 381 F.3d at 783 (quoting *Kucia v. Southeast Arkansas Community Action Corp.,* 284 F.3d 944, 947 (8th Cir.2002)); *Bailey v. Runyon,* 220 F.3d 879, 880 (8th Cir.2000) (same, citing *Forshee v. Waterloo Indus., Inc.,* 178 F.3d 527, 531 (8th Cir.1999), in turn quoting *Carey v. Piphus,* 435 U.S. 247, 264 n. 20, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978)). More specifically, " '[m]edical or other expert evidence is not required to prove emotional distress.' " *Bailey,* 220 F.3d at 881 (quoting *Kim v. Nash Finch Co.,* 123 F.3d 1046, 1065 (8th Cir.1997), in turn quoting *Turic v. Holland Hospitality, Inc.,* 85 F.3d 1211, 1215–16 (6th Cir.1996)). What is required is " 'evidence of the nature and extent of the emotional harm caused by the alleged violation.' " *Id.* at 880–81 (quoting *Browning v. President Riverboat Casino–Missouri, Inc.,* 139 F.3d 631, 636 (8th Cir.1998)). Therefore, the plaintiff is " 'required "to convince the trier of fact that [she] actually suffered distress because of the [Title VII violation] itself." ' " *Id.* (quoting *Price v. City of Charlotte,* 93 F.3d 1241, 1250 (4th Cir. 1996), *cert. denied,* 520 U.S. 1116, 117 S.Ct. 1246, 137 L.Ed.2d 328 (1997), in turn quoting *Carey,* 435 U.S. at 263, 98 S.Ct. 1042). For example, the Eighth Circuit Court of Appeals has found sufficient a plaintiff's testimony about constant fear of her harasser, panic attacks characterized by nausea, headaches, sweating, and hyperventilation, that she had been so afraid that she moved to a different home, obtained a gun card, purchased mace, and took to eating lunch and taking coffee breaks in the women's restroom, and that her fear had adversely affected her relationship with her children. *Rowe,* 381 F.3d at 783.

***ii. Application of the standards.*** First, the Postmaster's challenges to Bunda's evidence of emotional distress on the ground that her doctor and her licensed social worker are not board certified psychiatrists completely misses the point, because Bunda is not required to present expert testimony regarding emotional distress; her own testimony will suffice. *Rowe,* 381 F.3d at 783 (the plaintiff's own testimony will suffice to prove emotional distress); *Bailey,* 220 F.3d at 880 (expressly noting that expert testimony is not required to establish emotional distress). Second, the court finds that Bunda's own evidence is sufficient to generate genuine issues of material fact as to "the nature and extent of the emotional harm caused by the alleged [harassment]," and could reasonably "convince the trier of fact that [she] actually suffered distress because of the [Title VII violation] itself." *Bailey,* 220 F.3d at 880–81 (internal quotation marks and citations omitted). Bunda has testified that, as the result of the harassment, she now suffers from an acute adjustment disorder and has been prescribed anti-anxiety medications. *Cf. Rowe,* 381 F.3d at 783 (the plaintiff's own testimony concerning fear of the harasser and other symptoms was sufficient). Third, whether or not there were other "stressors" in Bunda's life besides harassment (and retaliation) at work goes to the weight of her evidence, not its legal sufficiency to generate a genuine issue of material fact at the summary judgment stage of the proceedings. *See Quick,* 90 F.3d at 1376–77 (the judge's function at the summary judgment stage of the proceedings is not to weigh the evidence and determine the truth of the matter, but to determine whether there are genuine issues for trial); *Johnson,* 906 F.2d at 1237 (same). Similarly, the "uncollaborated" evidence that myasthenia gravis was caused or aggravated by stress from harassment, by which the court assumes that the Postmaster and the pertinent expert mean "uncorroborated" evidence, again, goes to the weight of the evidence, not its legal sufficiency to

generate a genuine issue of material fact at the summary judgment stage of the proceedings. *Id.*

Therefore, the portion of the Postmaster's motion seeking summary judgment on Bunda's claim for emotional distress damages for sexual harassment will be denied.

*3. Summary*

Upon the foregoing, the court finds that no portion of the defendants' motion for summary judgment on the merits of, or emotional distress damages for, Bunda's sexual harassment claim has any merit. Therefore, Bunda's claim for sexual harassment will proceed to trial.

***E. Bunda's Retaliation Claim***

***1. Arguments of the parties***

The Postmaster has also moved for summary judgment on Bunda's claim that she suffered retaliation for complaining about sexual harassment. In essence, the Postmaster argues that none of the allegedly retaliatory disciplinary action can support such a claim, because all of the discipline against Bunda was imposed legitimately—even admittedly—for misconduct by Bunda, and that Bunda cannot demonstrate that the legitimate reasons for such discipline were pretexts for retaliation. The Postmaster also contends that Bunda cannot demonstrate the necessary "causation," because Davidson was unaware of her accusation of harassment until the meeting regarding her suspension in August of 2000, and the actual suspension was issued by a different supervisor.

Bunda resists this portion of the Postmaster's motion for summary judgment, as well. First, she points out that no disciplinary action was pending against her for the July 2000 incidents until she filed a "Report of Hazards" regarding the set up of the sorting machine on August 17, 2000, but immediately thereafter, she was given a disciplinary action for incidents that had occurred almost a month earlier. She contends that this evidence suggests that Davidson was trying to "get" her for filing complaints about harassment and that it is "interesting" that the USPS did not follow through with this disciplinary action. Second, she contends that another victim of Davidson's harassment, LaDonna Hart, has stated that it was obvious to her that an employee would suffer retaliation for complaining about harassment by Davidson, because he would change their work assignments, refuse to let them take breaks, and engage in other kinds of intimidation. Finally, she asserts that the separate incidents of discipline must be recognized as retaliatory, because they show that she was subjected to discipline for actions that other employees got away with. She also disputes when Davidson knew that harassment complaints had been lodged against him by Bunda, because the supervisors who investigated her complaints all talked to Davidson about them as part of their investigations.

***2. Analysis***

***a. The applicable burden-shifting analysis***

The Eighth Circuit Court of Appeals recently reiterated that, post-*Desert Palace,* the courts must still apply the *McDonnell Douglas* three-part burden-shifting analysis to retaliation claims. *Strate v. Midwest Bankcentre, Inc.,* 398 F.3d 1011, 1017–18 (8th Cir.2005) (holding that *Desert Palace* had no impact on the applicability of the burden-shifting analysis to either retaliation or discrimination claims); *see also Eliserio,* 398 F.3d at 1078 (applying the burden-shifting analysis to a retaliation claim); *Kratzer,* 398 F.3d at 1048 (same). Thus, "[t]o make a prima facie case of retaliation against an employer, a claimant must show that (1) he engaged in protected conduct by either

opposing an act of discrimination made unlawful by Title VII or participating in an investigation under Title VII; (2) he suffered an adverse employment action; and (3) the adverse action was causally linked to the protected conduct." *Eliserio,* 398 F.3d at 1078–79; *Kratzer,* 398 F.3d at 1048; *accord Henderson v. Ford Motor Co.,* 403 F.3d 1026, 1035 (8th Cir.2005) ("To state a retaliation claim, a plaintiff must show that she (1) engaged in a protected activity, (2) that she suffered an adverse employment action, and (3) that the two events are causally connected."). If the plaintiff establishes a *prima facie* case of retaliation, the burden shifts to the employer to offer a non-retaliatory reason for alleged retaliation, and if the employer does so, the plaintiff must show that the proffered reason is a pretext for retaliation. *Id.* at 1079–80; *Kratzer,* 398 F.3d at 1048 ("Once the prima facie case is made, [the employer] must articulate a legitimate, nondiscriminatory reason for its actions," and if the employer does so, then "[t]he burden shifts to [the employee] to establish that the alleged legitimate, nondiscriminatory reason for [adverse action] was a pretext."). As to pretext, the question is whether a reasonable jury could find the defendant's explanation to be a mere pretext for retaliation in light of the evidence presented. *Id.*

***b. Application of the standards***

The Postmaster's arguments involve both the third element of Bunda's *prima facie* case and the third stage of the burden-shifting analysis, because the Postmaster contends that Bunda cannot show either causation or pretext, where all of the disciplinary actions against Bunda were legitimate responses to her own misconduct, and she has not rebutted the legitimate reasons for those actions. The court finds the viability of Bunda's retaliation claim to be the only truly close question presented in the Postmaster's motion for summary judgment. This is so, because Bunda's admissions to the conduct on which the disciplinary actions is based do suggest the legitimacy of and lack of pretext in those disciplinary actions. Bunda must take the much more difficult course of attempting to prove that otherwise legitimate disciplinary actions were nevertheless retaliatory. Thus, what Bunda must do is generate a genuine issue of material fact that the discipline was not imposed for Bunda's misconduct, but was instead caused by protected activity and was a pretext for retaliation. *See Eliserio,* 398 F.3d at 1078–79 (the plaintiff must show that adverse action was causally linked to protected conduct); *see also Strate,* 398 F.3d at 1017 (in the context of the burden-shifting analysis, "pretext" or "pretextual" "must be read as shorthand for indicating that a defendant's proffered [non]discriminatory explanation for adverse employment action is a pretext *for unlawful discrimination,* not that it is merely false in some way.") (emphasis in the original).

At this juncture, the court is particularly mindful that it must view all the facts in the light most favorable to the nonmoving party, Bunda, and give her the benefit of all reasonable inferences that can be drawn from the facts, *see Matsushita Elec. Indus. Co.,* 475 U.S. at 587, 106 S.Ct. 1348; *Quick,* 90 F.3d at 1377; that it must not weigh the evidence to determine the truth of the matter, but only determine whether there are genuine issues for trial. *Quick,* 90 F.3d at 1376–77; and that, because summary judgment often turns on inferences from the record, it should grant summary judgment only seldom or rarely in employment discrimination cases. *See, e.g., Crawford,* 37 F.3d at 1341. Recognizing these requirements for disposition of a motion for summary judgment in an employment case, the court concludes that Bunda has—perhaps just barely—generat-

ed genuine issues of material fact that the allegedly retaliatory disciplinary actions were actually caused by her protected activities and that the legitimate reasons for such discipline do not fully explain the imposition of such discipline, but are instead a pretext for retaliation. First, Bunda has pointed to record evidence suggesting that other employees who engaged in conduct similar to that on which the disciplinary actions against her were based were not so disciplined, suggesting that her misconduct was not the real reason for the disciplinary action. Second, Bunda has pointed to record evidence that she was not subjected to disciplinary action for the incidents in July 2000 until she complained again about Davidson's harassment, such that the belated disciplinary action has a whiff of retaliation in it. Finally, the Postmaster's contention that Davidson was not aware of Bunda's complaints about his alleged harassment could strain the credulity of a reasonable juror, where Bunda has pointed to evidence that Davidson was interviewed or talked to about several incidents of alleged harassment that Bunda brought to the attention of her supervisors or managers. Under these circumstances, Bunda is also entitled to present her retaliation claim to a jury.

Finally, for essentially the same reasons Bunda is entitled to assert her prayer of emotional distress damages on her harassment claim, she is also entitled to assert her prayer for such damages on her retaliation claim. *See supra,* Section II.D.2.e.

Therefore, the Postmaster's motion for summary judgment on Bunda's retaliation claim will also be denied.

### III. CONCLUSION

When the proper standards are applied to the claims actually at issue in this case, it becomes apparent that the Postmaster and the other soon-to-be-dismissed defendants are not entitled to summary judg-

ment on the merits of either Bunda's sexual harassment or retaliation claims. Rather, the only parts of the defendants' motion for summary judgment that the court finds to be meritorious are the assertions that the Postmaster is the only proper defendant and that punitive damages cannot be awarded against him.

THEREFORE,

1. The defendants' March 4, 2005, Motion For Summary Judgment (docket no. 31) is **granted in part** and **denied in part**, as follows:

 a. The motion is **granted** as to the United States Postal Service and individual defendant Ray Davidson, as they are not proper defendants in this action. The only proper defendant is John E. Potter, the Postmaster General. 42 U.S.C. § 2000e–16(c).

 b. The motion is **granted** as to the plaintiff's prayer for punitive damages, as such damages are not available against a government agency. 42 U.S.C. § 1981a(b)(1).

 c. The motion is otherwise **denied** as to the plaintiff's claims of hostile environment sexual harassment and retaliation.

2. The defendants' April 4, 2005, Motion To Strike Portions Of Plaintiff's Statement Of Disputed Facts (docket no. 38) is denied.

**IT IS SO ORDERED.**